# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH PILCHESKY,** | : | |
| | : | **Civil No. 3:14-CV-381** |
| **Plaintiff** | : | |
| | : | **(Judge Mannion)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DEPUTY U.S. MARSHAL** | : | |
| **BARONE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case

This *pro se* civil rights lawsuit comes before us for consideration of a motion to compel discovery filed by the plaintiff, Joseph Pilchesky. (Doc. 67.)  This motion to compel seeks further discovery in support of Pilchesky's allegation that the defendants violated the plaintiff's rights under the Fourth Amendment to the United States Constitution when they conducted a warrantless search of the plaintiff's home seeking the plaintiff's paramour, who was wanted on a state arrest warrant.

With respect to this legal claim it is alleged that in December 2013, the plaintiff, Joseph Pilchesky, was involved in a romantic relationship with Stephanie Tarapchak. In the course of this relationship, on occasion Tarapchak stayed with Pilchesky at his residence, 819 Sunset Street in Scranton, Pennsylvania.  On December 19, 2013, the Court of Common Pleas for Lackawanna County issued a warrant for Tarapchak's arrest.  On December 30, 2013, the arresting agency in Tarapchak's case, the Office

of the Pennsylvania Attorney General, requested the assistance of the United States Marshals Service in locating and arresting Tarapchak.  After Deputy U.S. Marshals learned that Tarapchak frequented Pilchesky's home, the defendant deputies traveled to Pilchesky's residence to try to apprehend her.

When the defendant deputies arrived at the home, they knocked and announced their presence, but received no response, although they observed lights burning inside the home.  The deputies then established a perimeter around the home, and were informed by a neighbor that the neighbor believed that Stephanie Tarapchak and her daughter, Fallon, had been dropped off at Pilchesky's home at approximately 1:00 a.m. Other neighbors also reported that Tarapchak had frequently been seen coming and going from Pilchesky's home.

As the deputies surrounded Pilchesky's home they heard voices inside the residence.  After several minutes a woman, who was later identified as Stephanie Tarapchak's daughter, Fallon, came to the rear door of the home, and engaged in a brief and profane exchange with a deputy refusing to allow the deputies access to Pilchesky's home.  Fallon Tarapchak also specifically demanded that the deputies produce a search warrant.

At this point the deputies took actions which are undisputed, but may be subject to two very different interpretations.  The deputies contacted the United States

Attorney's Office and spoke to an Assistant U.S. Attorney seeking a search warrant. In response the deputies were informed that, since the arrest warrant related to a state case, a search warrant should be obtained by the Pennsylvania Attorney General's office.  No search warrant was ever obtained by the defendants.  Instead, as their stand-off with Fallon Tarapchak continued, Fallon Tarapchak's sister and father arrived at the scene.  A series of communications then took place between the deputies and Fallon Tarapchak.  The tone, tenor and content of those communications are disputed by the parties.  For their part, the defendants assert that Fallon Tarapchak, who they believed had the authority to consent to a search of the home, voluntarily consented to a search after being advised of the possible penalties associated with harboring a fugitive.  Pilchesky presents a diametrically different account of these events, alleging that Fallon Tarapchak was an overnight guest in his home who had no authority to consent to a search.  Further, Pilchesky asserts that Fallon Tarapchak's consent was coerced through a threat that she would be arrested for harboring a fugitive if she did not permit entry into the home.

The deputies then conducted a search of the home.  That search did not locate the fugitive the deputies were seeking, Stephanie Tarapchak, or any other occupants of the home.  At the conclusion of this search, according to the defendants they "released Fallon [Tarapchak] from custody because she complied with all directions." (Doc. 34-1, ¶31.)

It is against this factual backdrop, that Pilchesky filed this lawsuit and now seeks discovery.   Pilchesky has submitted multiple requests for production of documents, and interrogatories to the defendants.  It is apparent that some of these discovery demands have already been fully answered.  For example, in response to numerous requests for information regarding the fugitive status of Ms. Tarapchak, the defendants have pointed Pilchesky to the evidence that was in their possession, the warrant for Tarapchak's arrest.  Other requests seems to call for defendants to opine on legal issues, or are cast in argumentative terms.  Still other requests focus on communications with Tarapchak's estranged husband, matters which may have only limited relevance here.  However, as we construe these requests, a series of requests seek factual information from the defendants that directly relates to three central issues in this case; namely:  (1) What was the factual basis for the belief that Ms. Tarapchak could be located inside Pilchesky's residence?  (2) What was the factual basis for the belief that Ms. Tarapchak resided at the Pilchesky home, a fact which would have obviated the need for a search warrant?   (3) What was the factual basis for the conclusion that Fallon Tarapchak, could and did, consent to a search of the Pilchesky residence?

For the reasons set forth below, to the extent that the plaintiff's discovery demands are narrowly construed to seek this factual information, we believe that the

motion to compel should be granted, subject to the government taking appropriate steps to protect the identity of any confidential informants.

## II.    Discussion

### A.    Motion to Compel –The Legal Standard

Several basic guiding principles inform our resolution of the instant discovery dispute.   At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26 of the Federal Rules of Civil Procedure. Fed. R. Civ. P., Rule 26(b)(1), which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Therefore, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v.

> BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)
> (holding that discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223
> F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's
> resolution of discovery disputes deserves substantial deference and
> should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles.  Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches nonprivileged matter that is relevant to any party's claim or defense. Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope of discovery permitted by Rule 26 embraces all relevant information a concept which is not confined to admissible evidence but is also defined in the following terms: "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information.  Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001).  Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as

defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009). Likewise, valid claims of privilege limit the scope of discovery but "[i]n deciding whether a federal privilege against discovery exists, . . . the objecting party ha[s] the burden of establishing the privilege." Bayges v. Se. Pennsylvania Transp. Auth., 144 F.R.D. 269, 271 (E.D. Pa. 1992). Indeed, because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is well-established that, " 'The burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.' United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)." Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979).

Furthermore, in an investigative setting, requests for information can implicate a legitimate governmental privilege, a governmental privilege which acknowledges the government's need for confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the

impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

Included among these governmental investigative privileges is what is known as the informer's privilege, a legal privilege that allows the government in some circumstances to refrain from identifying confidential informants who have assisted in investigations by providing information to law enforcement. "The purpose of the federal informer's privilege is to 'protect "the public interest in effective law enforcement," ... [b]y ensuring the anonymity of those reporting violations of the law' which ' "encourages [citizens] to perform that obligation." ' Chao, 2008 WL 2064354, at *3 (quoting Rovario, 353 U.S. at 59)." D.M. v. Cty. of Berks, No. CIV.A. 12-6762, 2013 WL 3939565, at *6 (E.D. Pa. July 30, 2013). With regard to this informer's privilege: "[t]here is no 'fixed rule' as to when disclosure [of a confidential informant's identity] is required; rather, trial courts must 'balanc[e] the public interest

in protecting the flow of information against the individual [needs of the litigants]."
United States v. Grant, 256 F. Supp. 2d 236, 243 (D. Del. 2003).

Finally, when considering discovery demands, like those propounded in this case which often ask parties to opine on legal questions, it is well-settled that: "Facts are discoverable, the legal conclusions regarding those facts are not." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994). With these guiding principles in mind we turn to a consideration of Pilchesky's discovery demands in this case.

**B.    Pilchesky's Motion to Compel Should Be Granted, In Part, But Only to the Extent that it Seeks Factual Information Relating to Issues Central to this Case**

The threshold determination in any motion to compel involves an analysis of whether the discovery sought by a party is relevant to any party's claim or defense. This inquiry call upon us to consider the legal and factual issues raised in the parties' dispute. In this case, Pilchesky has alleged that the defendants violated the plaintiff's rights when they conducted a warrantless search of the plaintiff's home seeking the plaintiff's paramour, who was wanted on a state arrest warrant. Thus, at bottom, Pilchesky's third amended complaint brings a civil rights claim under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and now Warrants shall issue, but upon probable cause, supported by
> Oath or affirmation, and particularly describing the place to be searched,
> and the persons or things to be seized.

U.S. Const. amend IV.

Several legal tenets govern our consideration of this particular Fourth Amendment claim. First, in order to comport with the Fourth Amendment there typically are two prerequisites to any search: probable cause and a warrant.

In the context of a search for a person or thing, probable cause is typically defined as "a fair probability that contraband [fugitive] or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). But typically probable cause, standing alone, will not fully justify a search under the Fourth Amendment since such searches often must be conducted pursuant to a search warrant. As for the Fourth Amendment's warrant requirement:

> "It is a 'basic principle of Fourth Amendment law,' " we have often said,
> " 'that searches and seizures inside a home without a warrant are
> presumptively unreasonable.' " Brigham City v. Stuart, 547 U.S. 398,
> 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (quoting Groh v. Ramirez,
> 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)). But we
> have also recognized that this presumption may be overcome in some
> circumstances because "[t]he ultimate touchstone of the Fourth
> Amendment is 'reasonableness.' " Brigham City, supra, at 403, 126 S.Ct.
> 1943; see also Michigan v. Fisher, 558 U.S. 45, ——, 130 S.Ct. 546, 548,
> 175 L.Ed.2d 410 (2009) (per curiam). Accordingly, the warrant

requirement is subject to certain reasonable exceptions. <u>Brigham City,</u> <u>supra,</u> at 403, 126 S.Ct. 1943.

<u>Kentucky v. King</u>, 563 U.S. 452, 459 (2011).  Therefore, "searches conducted outside judicial process, without prior approval by judge or magistarate are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967).

The defendants have justified their warrantless search of Pilchesky's residence by relying upon two of these  specifically established and well-delineated exceptions to the Fourth Amendment's warrant requirement.  First, defendants have argued that under the Fourth Amendment they were permitted to enter the residence pursuant to the arrest warrant for Stephanie Tarapchak because they possessed a valid arrest warrant, and had probable cause to believe that Tarapchak both was inside the home, and resided at the home.  This narrow exception to the warrant requirement was defined by the Supreme Court in <u>Payton v. New York</u>, 445 U.S. 573 (1980) and provides that: "'[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.' <u>Payton v. New York</u>, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); <u>see also</u> <u>United States v. Edmonds</u>, 52 F.3d 1236,

1247 (3d Cir.1995), <u>vacated on other grounds</u>, 80 F.3d 810 (3d Cir.1996).  <u>Payton</u> requires that officers have 'a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry.'  <u>United States v. Gay</u>, 240 F.3d 1222, 1226 (10th Cir.2001); <u>see also Edmonds</u>, 52 F.3d at 1247.  To determine whether the police had probable cause to believe a suspect was residing and present in a home, we apply a 'common sense approach' and consider 'the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality.'  <u>United States v. Magluta</u>, 44 F.3d 1530, 1535, 1536 (11th Cir.1995)." <u>United States v. Veal</u>, 453 F.3d 164, 167-68 (3d Cir. 2006).  Thus, the question of whether a person resides at an address, and may be searched for at that address based solely upon an arrest warrant is a highly fact-bound determination, which must take into account the totality of the circumstances.  See <u>United States v. King</u>, 604 F.3d 125, 137 (3d Cir. 2010).

The second exception to the Fourth Amendment's warrant requirement which defendants have proffered as a legal defense to this lawsuit is the consent search doctrine.  Defendants have argued that the warrantless search of Pilchesky's residence was justified because Fallon Tarapchak voluntarily consented to that search.  However, like the narrow exception crafted for a search of the residence of a fugitive this exception to the Fourth Amendment's warrant requirement entails a fact-intensive

analysis of a body of disputed facts.  For a consent search to be valid two requisites must be met:  (1) consent must be voluntary, and (2) given by a person with the authority to consent to the search.  See United States v. Matlock, 415 U.S. 164, 172,n. 7 (1974); Schneckloth v. Bustamonte, 412 U.S. 218, 223 (1973).  On this score, "'[W]e determine the voluntariness of a consent by examining the totality of the circumstances.'  Price, 558 F.3d at 278; Schneckloth, 412 U.S. at 227, 93 S.Ct. 2041. We consider such factors as 'age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter, the repetition or duration of the questioning; and the use of physical punishment.' Price, 558 F.3d at 278; see Schneckloth, 412 U.S. at 226, 93 S.Ct. 2041.  The "'setting in which the consent was obtained [and] the parties' verbal and non-verbal actions'" are also relevant.  Price, 558 F.3d at 278 (quoting United States v. Givan, 320 F.3d 452, 459 (3d Cir.2003))."  United States v. Stabile, 633 F.3d 219, 231 (3d Cir. 2011). Further, as the party relying upon the consent search doctrine, the defendants have "the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority."  Florida v. Royer, 460 U.S. 491, 497 (1983).

In this case, these legal tenets and the factual circumstances surrounding this search appear to define three central issues for the parties:  (1) What was the factual

basis for the belief that Ms. Tarapchak could be located inside Pilchesky's residence? (2) What was the factual basis for the belief that Ms. Tarapchak resided at the Pilchesky home, a fact which would have obviated the need for a search warrant? (3) What was the factual basis for the conclusion that Fallon Tarapchak, could and did, consent to a search of the Pilchesky residence?

With the central issues in this lawsuit defined in this fashion, we agree that a number of Pilchesky's discovery demands were properly the subject of objections, and will not compel further responses to those discovery demands. For example, a number of these discovery demands seem to have been addressed fully by the defendants. Thus, Pilchesky propounded multiple discovery demands inquiring into the basis for the conclusion that Stephanie Tarapchak was a fugitive, but the defendants have fully responded to this request by directing the plaintiff's attention to the warrant that had issued for Tarapchak's arrest. Similarly, many of Pilchesky's discovery demands are fashioned in an argumentative manner and seem to call upon the defendants to opine on legal questions. To the extent that Pilchesky sought legal opinions in his discovery demands it is clear that: "Facts are discoverable, the legal conclusions regarding those facts are not." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994). Therefore, we sustain the defendants' objections to these discovery demands which called for the disclosure of legal conclusions.

Still other discovery demands appeared to seek detailed disclosures relating to information that Ms. Tarapchak's estranged husband may have shared with law enforcement officials.  With respect to these broadly cast discovery demands we note that this information would only be discoverable to the extent that it shed some light upon the questions of probable cause and authority to consent which lie at the heart of this lawsuit.  Furthermore, to the extent that any person shared information under a promise of confidentiality the federal informer's privilege may be implicated.  Because the expansively framed discovery demands seeking information from Tarapchak's estranged husband are not moored to the legal claims in this case, and do not fully take into account potential privilege claims, we will not compel answers to these questions, as they have been tendered to the defendants.

While we find that all of these objections were well taken by the defendants, our review of Pilchesky's discovery demands discloses to us that Pilchesky appears to also be seeking factual information relating to the basis for the belief that Ms. Tarapchak could be located inside Pilchesky's residence; the basis for the belief that Ms. Tarapchak resided at the Pilchesky home, a fact which would have obviated the need for a search warrant; and the basis for the conclusion that Fallon Taraphcak, could and did, consent to a search of the Pilchesky residence.  In our view these are factual matters which are properly the subject of discovery, and the defendants should,

therefore, supplement their prior responses by providing a complete disclosure of the factual basis for these three investigative judgments.

We recognize, of course, that this disclosure may potentially implicate the confidential informer's privilege.  To the extent that it does, we prescribe the following course for the parties:  As we view it, the informer's privilege applies primarily to the identity of the informer and not the substance of the informer's information.  Therefore, consistent with the government's practice in other, related contexts, the defendants may comply with this order by providing in response to interrogatories a factual narrative describing the information provided by confidential sources without identifying those sources.  Pilchesky may then seek the identity of those sources through a further, more narrowly focused motion to compel, if necessary.

An appropriate order follows.

### III.   Order

AND NOW this 7th day of December 2016, the plaintiff's motion to compel, (Doc. 67.), is GRANTED in part and DENIED in part, as follows:

1.      To the extent that Pilchesky appears to be seeking factual information relating to the basis for the belief that Ms. Tarapchak could be located

inside Pilchesky's residence; the basis for the belief that Ms. Tarapchak resided at the Pilchesky home, a fact which would have obviated the need for a search warrant; and the basis for the conclusion that Fallon Taraphcak, could and did, consent to a search of the Pilchesky residence these are factual matters which are properly the subject of discovery, and the defendants should, therefore, supplement their prior responses on or before **December 30, 2016**, by providing a complete disclosure of the factual basis for these three investigative judgments.

2.    To the extent that this disclosure may potentially implicate the confidential informer's privilege, consistent with the government's practice in other, related contexts, the defendants may comply with this order by providing in response to interrogatories a factual narrative describing the information provided by confidential sources without identifying those sources.  Pilchesky may then seek the identity of those sources through a further, more narrowly focused motion to compel, if necessary.

3.    In all other respects the motion is DENIED.

<em><strong>S/Martin C.  Carlson</strong></em><br>Martin C. Carlson<br>United States Magistrate Judge