# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| JOSEPH W. PILCHESKY, | : | |
|---|---|---|
| **Plaintiff** | : | CIVIL ACTION NO. 3:14-0381 |
| | : | |
| v. | : | (MANNION, D.J.)<br>(CARLSON, M.J.) |
| | : | |
| DEPUTY U.S. MARSHAL BARONE, *et al.,* | : | |
| | : | |
| **Defendants** | | |

## **MEMORANDUM**

Pending before the court is the report of Magistrate Judge Martin C. Carlson, (Doc. 99), in which he recommends that defendants' motion for summary judgment, (Doc. 84), be granted with respect to plaintiff's remaining Fourth Amendment claim. He also recommends that plaintiff's cross-summary judgment motion, (Doc. 85), be denied. Specifically, Judge Carlson recommends that the court grant the motion for summary judgment of defendant Deputy U.S. Marshals' ("DUSM") with respect to plaintiff's constitutional claim raised in this civil rights action alleging that the DUSMs unlawfully searched his home, without a search warrant, looking for his fugitive girlfriend who was wanted by state officials and for whom an arrest warrant had been issued. Judge Carlson also finds that the DUSMs are entitled to qualified immunity shielding them from liability. Upon review of Judge Carlson's report, plaintiff's objections thereto, (Doc. 100), and defendants' brief in opposition to plaintiff's objections, (Doc. 101), the court

will **ADOPT IN ITS ENTIRETY** the report and **OVERRULE** plaintiff's objections.

**I.     BACKGROUND**

By way of relevant background, on March 4, 2014, plaintiff Joseph W. Pilchesky filed, *pro se*, a *Bivens*[1] civil rights action pursuant to 28 U.S.C. §1331. (Doc. 1). Plaintiff also filed motions to proceed *in forma pauperis*. (Doc. 2, Doc. 3). His complaint was given preliminary consideration pursuant to 28 U.S.C. §1915(e)(2), (Doc. 4), after which it was determined that plaintiff had improperly named a federal agency as a defendant, i.e., U.S. Marshals Office, and that his claims for specific sums of unliquidated damages should be stricken from his complaint under Fed.R.Civ.P. 12(f). *See* FDIC v. Meyer, 510 U.S. 471, 483 (1994). Plaintiff was, however, permitted to file an amended complaint and his *in forma pauperis* motions were granted. Plaintiff filed his amended complaint on May 5, 2014, (Doc. 5), naming four Jane/John Doe defendants. After his amended complaint could not be served on the Doe defendants, plaintiff filed a second amended complaint on June 27, 2014, (Doc. 10), in which he named Martin Payne, U.S. Marshal, as a defendant,di

---

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). A *Bivens*-type action, which alleges that a federal official violated plaintiff's constitutional rights, is the federal counterpart to a civil rights action filed under 42 U.S.C. §1983. *See* Paton v. LaPrade, 524 F.2d 82 (3d Cir. 1975); Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001).

2

as well as the original Jane/John Doe defendants. Plaintiff stated that after he identified the Doe defendants, he would move to file a third amended complaint. Judge Carlson, then directed service of plaintiff's second amended complaint upon defendant Payne and instructed plaintiff to move to amend his pleading after he discovers the identities of the Doe defendants. (Doc. 12).

After being served, defendant Panye filed a motion to dismiss plaintiff's second amended complaint. (Doc. 20). Plaintiff then indicated that he wished to move to amend his pleading to name the Doe defendants and Judge Carlson allowed him to file such motion. (Doc. 26).

On January 5, 2015, plaintiff filed his third amended complaint ("TAC") naming as defendants DUSM Maggie Barone, Sharon Summa, Joseph Brozowski, and Robert Lenahan. (Doc. 27). Since plaintiff did not re-name Payne as a defendant in his TAC, Payne was terminated as a party and his Doc. 20 motion was dismissed as moot. In his TAC, plaintiff alleges that defendant DUSMs violated his rights under the Fourth Amendment when they conducted a warrantless search of his home seeking to serve a valid arrest warrant on his girlfriend Stephanie Tarapchak ("Tarapchak"). Plaintiff also raised a Fourteenth Amendment class of one equal protection claim alleging that defendants unfairly singled out his home to search for Tarapchak who was wanted on a state arrest warrant.

On March 23, 2015, the four defendants jointly filed a motion to dismiss, or alternatively, motion for summary judgment with respect to plaintiff's TAC.

3

(Doc. 32). Defendants also filed their brief in support, (Doc. 34), statement of material facts, (Doc. 34-1), and exhibits. Plaintiff filed a motion for an extension of time on July 8, 2015, (Doc. 44), which Judge Carlson construed as a Rule 56(d) motion to defer ruling on summary judgment motions until discovery is completed. Plaintiff did not file a brief in opposition to defendants' dispositive motion or a response to their statement of material facts.

On January 27, 2016, Judge Carlson issued a report. (Doc. 50), in which he recommended that defendants' motion for summary judgment, (Doc. 32), be granted, in part, with respect to plaintiff's Fourteenth Amendment equal protection claim. He also recommended that defendants' summary judgment motion be denied with respect to plaintiff's Fourth Amendment claim regarding the warrantless search of his home for a fugitive without prejudice to defendants to re-assert their motion after discovery was completed. Further, Judge Carlson recommended that plaintiff's motion for an extension of time, (Doc. 44), be granted insofar as its it was construed as a motion under Fed.R.Civ.P. 56(d) to defer ruling on summary judgment motions until further discovery regarding his Fourth Amendment claim. Defendants filed objections to the report on February 10, 2016, (Doc. 53), and a brief in support of their objections, (Doc. 55). Plaintiff did not file any objections to Judge Carlson's report. On February 29, 2016, plaintiff filed a motion for leave of court to file an untimely answer to defendants' objections, (Doc. 56), with his proposed answer attached, (Doc. 56-1). On March 7, 2016, plaintiff filed a supplement

4

to his answer to defendants' objections, (Doc. 60).

After review of Judge Carlson's report, (Doc. 50), the defendants' objections thereto, (Doc. 53), and plaintiff's responses, (Doc. 56, Doc. 60), the court adopted in its entirety Judge Carlson's report. (Doc. 62). The case was then recommitted to Judge Carlson for further proceedings.

Following discovery, the parties filed their cross-motions for summary judgment on March 13, 2017. (Doc. 84, Doc. 85). Subsequently, both motions were briefed and exhibits were submitted.

On May 30, 2017, Judge Carlson issued his (Doc. 99)report. On June 12, 2017, plaintiff filed his objections to the report, (Doc. 100), and on June 23, 2017, defendants' brief in opposition to plaintiff's objections, (Doc. 101).

## II.  STANDARD OF REVIEW[2]

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000)

---

[2]Since Judge Carlson states the applicable standard for summary judgment in his report, (Doc. 99, pp. 8-9), the court does not repeat it herein.

(citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; *see also* Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

### III. DISCUSSION

The court now considers plaintiff's Fourth Amendment illegal search claim. Plaintiff basically alleges that on December 30, 2013, defendants unlawfully entered and searched his home located at 819 Sunset Street, Scranton, Pennsylvania, when they possessed an arrest warrant for his girlfriend Tarapchak. Since Judge Carlson has detailed the undisputed facts of this case that are supported by the evidence as well as the applicable legal standards, the court adopts them and will not repeat them, in detail, herein.

Recently, the Third Circuit considered the issue of what the applicable

standard is for officials to enter a home with an arrest warrant to search for a fugitive. *See* United States v. Vasquez–Algarin, 821 F.3d 467 (3d Cir. 2016).³ The Third Circuit held that "[i]n order to enter a home pursuant to an arrest warrant, law enforcement officers must possess 'probable cause to believe [the] arrestee resides at and is then present within the residence.'" Estate of Martin v. U.S. Marshals Service Agents, 649 Fed.Appx. 239, 242 (3d Cir. 2016) (quoting United States v. Vasquez–Algarin, 821 F.3d 467, 480 (3d Cir. 2016)). As Judge Carlson thoroughly explains, "the undisputed evidence demonstrates that the deputy marshals had probable cause to believe that Stephanie Tarapchak resided with Pilchesky, at least part of the time, and was within the home when they arrived, and, therefore, the deputies were authorized under existing Fourth Amendment jurisprudence to enter the premises to attempt to arrest her pursuant to a valid arrest warrant." (Doc. 99, p. 8). Judge Carlson details the precise information which the deputy marshals had when they arrived at plaintiff's house on December 30, 2013. (Id., pp. 3-4). The evidence also shows that the deputy marshals entered the house for the purpose of executing an arrest warrant on Tarapchak. Plaintiff argues that Judge Carlson erred in finding that the deputy marshals had

---

³In his report, (Doc. 99, pp. 11-15), Judge Carlson examines the Third Circuit's decision in *Vasquez-Algarin* and he correctly applies it to the facts of this case. The court adopts this portion of Judge Carlson's report and incorporates it herein by reference.

7

probable cause to enter his house and that there was insufficient evidence in the record to make such a finding.

The court finds, as a matter of law, that the stated information provided sufficient probable cause for the deputy marshals to believe Tarapchak resided at plaintiff's house, at least fifty percent of the time, and was present in the house on December 30, 2013. In determining if the deputy marshals had probable cause, "the relevant question is whether the facts and circumstances within the knowledge of the Defendants, when viewed in relation to the totality of the circumstances, were sufficient to warrant a person of reasonable prudence and caution to believe that [Tarapchak] was residing and present within the residence at the time of the [search]." Adams v. Springmeyer, 17 F.Supp.3d 478, 495 (W.D.Pa. 2014) (citation omitted). "The constitutionality of the Defendants' conduct must be considered in light of the information that was available to them at the time of their actions." Id. (citation omitted). "When probable cause exists, a law enforcement officer may act without undertaking an exhaustive investigation to validate his or her understanding of the relevant factual circumstances." Id. at 497. Although, "the existence or absence of probable cause generally presents a question of fact for the jury", Adams, 17 F.Supp.3d at 498 (citing Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998)), "[a] court can conclude that probable cause existed as a matter of law only if the evidence, when viewed in the light most favorable to the nonmoving party, would not support a finding

to the contrary." Id. (citing Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003)).

The court finds that plaintiff's attempt to rely on the facts of the *Vasquez-Algarin* case to support his contention that the deputy marshals did not have probable cause in his case is unavailing. As defendants explain, (Doc. 101, pp. 9-10), in their brief in opposition to plaintiff's objections:

> First, Mr. Pilchesky conceded in his own complaint and deposition testimony that Ms. Tarapchak resided at 819 Sunset Street. See SMF [Doc. 90] ¶¶ 9-23. Second, although the DUSMs in this case relied upon similar information as the DUSM in Vasquez-Algarin, viz., a tip and police information, the DUSMs did here what the DUSM in Vasquez-Algarin did not. DUSM Summa specified that she relied on information provided by Ms. Tarapchak's ex-husband, whose children were staying with Ms. Tarapchak at the 819 Sunset Street address. See SMF ¶¶4-5 (citing Supp. Interrogatory Resp. of Sharon Summa (Ex. F)). Unlike the unspecified tips provided by undisclosed informants in Vasquez-Algarin, the DUSMs here, presented specific information that Mr. Tarapchak told officers that Ms. Tarapchak lived at the 819 Sunset Street address at least 50% of the time. See Supp. Interrogatory Resp. of Sharon Summa (Ex. F to SMF). In addition, to the information provided by Mr. [Alex] Tarapchak, DUSM Summa did her own personal research and relied upon information provided by the Pennsylvania Attorney General that Ms. Tarapchak resided at the address with her paramour Mr. Pilchesky. See SMF ¶¶4-5. Neighbors also corroborated that Ms. Tarapchak resided in the home. See 3d Am. Compl. (Introduction paragraph.) at 2.; SMF [¶'s 29-30].

Also, as defendants note, Tarapchak's ex-husband, Alex Tarapchak, was not "like the anonymous sources found to be insufficient in Vasquez-Algarin, the ex-husband of Ms. Tarapchak should know where his ex-wife lived, as they had minor children together, and thus, would be a

9

reliable source of information." (Doc. 101, p. 10 n. 1) (citing SMF ¶¶3-23). Additionally, "... Mr. Tarapchak reported that on that day he had telephone calls from his daughter, Fallon, who told her father that she was with her mother at Pilchesky's home that day." (Doc. 90, ¶¶7-8). Further, the Third Circuit in Vasquez-Algarin, 821 F.3d at 481, stated that "once the predicate of residency is established, that alone carries significant weight in establishing probable cause to believe that the arrestee is present, necessarily reducing the quantum of proof needed to meet *Payton*'s second prong."

Since the court finds that no genuine issue of material fact exists as to whether the deputy marshals had probable cause to believe that Tarapchak was residing in Pilchesky's Sunset Street house and was present within the house at time of the search, and since the deputy marshals entered the house with a warrant for Tarapchak's arrest, defendants' summary judgment motion will be granted and plaintiff's summary judgment motion will be denied. The facts of *Vasquez-Algarin* are distinguishable from the instant case. In Vasquez-Algarin, 821 F.3d at 481-82, the evidence showed that the deputy marshal had significant doubt whether the arrestee actually resided at the North 13th Street, Harrisburg, PA house and he indicated that he wanted someone to answer the door after he knocked so he could try and get consent to enter the house.[4] The Third Circuit also indicated that in concluding that the

---

[4]Specifically, at trial, the Deputy Marshal testified that he continued to
(continued...)

intended arrestee (Rivera) lived at the house in question, "[the deputy] did not identify the number of informants, their reliability based on any prior interactions he may have had with them, the specific information they related, or even whether he obtained information from 'informants on the street' firsthand or through the other officer." Id. at 480. On the contrary, the evidence in the instant case shows no such doubt and demonstrates that the deputy marshals relied on corroborated and specific information and, that they had probable cause. *See* Vasquez-Algarin case, 821 F.3d at 480 (Considering the "totality of the circumstances" "in the context of second-hand information, encompasses considerations such as the basis and reliability of the information and the receiving officer's ability to corroborate its content.") (citations omitted).

Even if Tarapchak's daughter Fallon did not give the deputy marshals consent to search plaintiff's house, an issue which is disputed by the parties, based on the totality of the circumstances, they still had ample probable cause to believe that Tarapchak lived in the house and was present at the time of the search based on the information they had. *See* Estate of Martin v. U.S. Marshals Service Agents, 649 Fed.Appx. at 242-43. Thus, as Judge Carlson

---

⁴(...continued)
knock on the door of the apartment since "[t]he address was not the address of record for Mr. Rivera [the fugitive subject to an arrest warrant], so we wanted to knock and attempt to gain contact with somebody inside and gain their consent to search the address." Vasquez-Algarin, 821 F.3d at 471.

notes, (Doc. 99, p. 5 n. 1), the consent issue does not need to be addressed.

Finally, Judge Carlson finds the undisputed evidence shows that the deputy marshals are also entitled to qualified immunity since a reasonable officer could have concluded that Tarapchak resided at plaintiff's Scranton home, at least half of the time, and that she was present at his house at the time of their entry. Plaintiff argues that Judge Carlson erred in finding that the deputy marshals are entitled to qualified immunity since they lacked probable cause to enter his house. The court finds that Judge Carlson did not err with respect to his qualified immunity recommendation.

"Qualified immunity bars claims against government officials 'as long as those officials' actions d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Paoli v. Stetser, 651 Fed.Appx. 123, 125 (3d Cir. 2016). "Qualified immunity exists to give 'government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" Id. at 126. The qualified immunity analysis has two prongs. Pearson v. Callahan, 555 U.S. 223, 232 (2009). One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.* The other prong of the analysis is "whether such right was clearly established in light of the specific factual context." Paoli, 651 Fed.Appx. at 125 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001).

Defendants' evidence shows that they did independent research and relied on specific and sufficient information, including statements of plaintiff's neighbors and Alex Tarapchak, that was corroborated. (Doc. 99, p. 17, Doc. 90-6, p. 2). Plaintiff contends defendants' evidence was not credible, including the information from unidentified neighbors, an unnamed person in the Pennsylvania Attorney General's Office and from Alex Tarapchak, and that it was based largely on hearsay. He also states that his evidence, including Tarapchak's Declaration that she did not reside in his house, creates disputed factual issues as to whether the deputy marshals had probable cause. While plaintiff attempts to discredit each particular piece of evidence upon which the deputy marshals relied, Judge Carlson properly considered all of the evidence submitted by the parties and found that the deputy marshals had probable cause based on the totality of the circumstances. *See* Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795 (2003) (probable cause "deals with probabilities and depends on the totality of the circumstances."). Plaintiff contends that further investigation would have revealed that Tarapchak did not reside in his house 50% of the time. However, "[i]f the Defendants had probable cause to believe that [Tarapchak] was residing and present within the [819 Sunset Street] residence on [December 30, 2013], 'the likely result of any additional investigation that could have been conducted is irrelevant.'" Adams, 17 F.Supp.3d at 497 n. 18 (quoting Dintino v. Echols, 243 F.Supp.2d 255, 264 (E.D.Pa. 2003)).

As discussed, the court agrees with Judge Carlson's probable cause determination for the reasons detailed in his report. "It is well-settled that 'an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" Paoli, 651 Fed.Appx. at 125 (citing Payton v. New York, 445 U.S. 573, 603, 100 S.Ct. 1371 (1980)). "If an officer does not have reason to believe a suspect resides at the dwelling to be searched, he may not enter the home to effect an arrest without obtaining a search warrant for the home in the absence of exigent circumstances." Id. at 125-26 (citing United States v. Vasquez–Algarin, 821 F.3d 467 (3d Cir. 2016) (In *Paoli*, the Third Circuit noted that the *Vasquez–Algarin* case "requir[es] officers to have reason to believe that an arrestee lives in the residence subject to a *Payton* search and otherwise treating the home as a third party's home").

The deputy marshals had probable cause, based on their investigation, to believe that Tarapchak was in plaintiff's house on the day in question and that she lived there at times, and they were attempting to apprehend a fugitive suspect for whom an arrest warrant had been issued on December 19, 2013 by the Lackawanna County Court, charging her with several offenses, including drug delivery resulting in death, 18 Pa.C.S.A. §2506. "Based on the facts before [the deputy marshals] at the time, there is no reason to think that [they were] plainly incompetent or knowingly violating the law." Id. at 126;

14

Ziglar v. Abbasi, 137 S.Ct. 1843, 1866-67 (2017) (Supreme Court stated that "an official loses qualified immunity only for violating clearly established law" and that "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'") (citation omitted).

Judge Carlson finds that "no reasonable deputy United States Marshal would have believed that his or her act of entering a home where they reasonably believed ["based upon information that they had received from law enforcement, neighbors, and Tarapchak's own family"] a fugitive or other defendant subject to a valid arrest warrant was residing had violated the Fourth Amendment." (Doc. 99, pp. 8, 24). The court concurs with Judge Carlson's recommendation that the qualified immunity defense of defendants be granted. *See* Paoli, 651 Fed.Appx. at 125; Ziglar, 137 S.Ct at 1867 ("if a reasonable officer might not have known for certain that the conduct was unlawful—then the officer is immune from liability.").

Accordingly, the court shall adopt Judge Carlson's report, (Doc. 99), and overrule plaintiff's objections, (Doc. 100). Defendants' summary judgment motion, (Doc. 84), shall be granted. Plaintiff's motion for summary judgment, (Doc. 85), shall be denied. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 31, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0381-02.wpd

15